1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BONNETT FAIRBOURN**
 **FRIEDMAN & BALINT, PC**
Patricia N. Syverson (SBN: 203111)
psyverson@bffb.com
600 West Broadway, #900
San Diego, CA 92101
Telephone: (619) 798-4292
Fax: (602) 274-1199

Andrew S. Friedman
(*Pro Hac Vice pending*)
afriedman@bffb.com
Francis J. Balint, Jr.
(*Pro Hac Vice pending*)
fbalint@bffb.com
2325 East Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Fax: (602) 274-1199

Randy D. Curry (SBN: 119636)
randydcurrylaw@gmail.com
LAW OFFICES OF RANDY D. CURRY
2901 W. Coast Highway, Suite 200
Newport Beach, CA 92663
Telephone: (949) 258-4381
Fax: (949) 258-4382

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| WILLIAM F. WREN, a California resident, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> TRANSAMERICA LIFE INSURANCE COMPANY, an Iowa corporation, <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br> **AND** <br> **DEMAND FOR JURY TRIAL** <br><br> 1.    Declaratory Relief <br> 2.    Breach of Express Contract <br> 3.    Contractual Bad Faith <br> 4.    Tortious Bad Faith |

CLASS ACTION COMPLAINT

Plaintiff William F. Wren ("Plaintiff"), by and through his undersigned attorneys, brings this action on behalf of himself and all others similarly situated against Defendant Transamerica Life Insurance Company ("TLIC"), asserting claims arising out of TLIC's breach of its obligation to pay the 300% "Cash Value Increase" due on the 30th policy anniversary of the TLIC "Direct Recognition Life I" policy issued to Plaintiff in 1990. TLIC has also anticipatorily breached its similar obligation to pay the 300% "Cash Value Increase" due on the 40th policy anniversary of Plaintiff's policy. TLIC's sole justification for doing so is the pretextual assertion that it was somehow relieved of that obligation under the terms of the 2000 class action settlement (the "*Oakes* Settlement") reached in certain litigation in Texas state court, styled *Richard Oakes, et al. v. Bankers United Assurance Company, et al.*, No. 96-06849 (Dallas County, Texas, Dist. Ct., 192nd Judicial District) (the "*Oakes* Action "). As shown below, TLIC's contention is unsupported by the terms of settlement as communicated to the *Oakes* Settlement class, and is inconsistent with TLIC's subsequent ratification and course of performance for 15 years following the *Oakes* Settlement.

## THE PARTIES

1.    Plaintiff is a domicile and resident of San Bernadino County, California, and thus a citizen of the State of California.

2.    Defendant TLIC is a corporation organized under Iowa law, with its principal place of business located in Iowa. TLIC is thus a citizen of the State of Iowa. TLIC has assumed responsibility to perform the obligations of its predecessor-in-interest General Services Life Insurance Company and Bankers United Life Assurance Company.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. Plaintiff and TLIC are diverse citizens, and

1

CLASS ACTION COMPLAINT

the amount in dispute exceeds $75,000. Plaintiff furthermore alleges claims on behalf of the National Class and a California Subclass (collectively, the "Classes"); for each of the Classes, the members are minimally diverse from TLIC, and the aggregate of their claims exceed $5,000,000. This Court accordingly has subject matter jurisdiction over this class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

4.    Venue is proper in this District under 28 U.S.C. § 1391. Plaintiff resides in this District; TLIC maintains substantial operations in this District; hundreds of members of the Classes either reside or did business with TLIC in this District; TLIC engaged in business in this District; a substantial part of the events or omissions giving rise to the claims at issue occurred in this District; and because TLIC entered into transactions and received substantial profits from consumers who reside in this District.

## COMMON ALLEGATIONS

### A.    The Terms of Plaintiff's Policy Contract

5.    In 1990 TLIC's predecessor-in-interest General Service Insurance Company issued to Plaintiff a certificate of insurance for a "Direct Recognition Life I" second-to-die life insurance policy (No. 000G016164) insuring the lives of his parents, William A. Wren and Joan F. Wren, in the face amount of $1,000,000 (the "Policy").

6.    The Policy was issued under a Master Contract between TLIC and the Insurance Coalition of America (the "Master Contract"), and is evidenced by Group Insurance Certificate No. G016164, dated September 7, 1990 (the "Group Insurance Certificate"), a true and accurate copy of which is attached as **Exhibit A**.

7.    The Group Insurance Certificate provides that it "states and defines … the benefits to which each Certificate Owner is entitled…" **Exhibit A**, at 5.

CLASS ACTION COMPLAINT

8.   Plaintiff is the designated owner and beneficiary of the Policy.

9.   The Policy was designed to encourage Policyowners like Plaintiff to keep the Policy in force for 20, 30 and even 40 years.  To do so, TLIC agreed to credit so-called "Cash Value Increases" to the Policy's account value as of the Policy's 20th, 30th, and 40th anniversary date; that is, on September 7, 2010, September 7, 2020, and September 7, 2030.

10.  To serve TLIC's objective in encouraging Policyowners to continue the Policies in force for extended periods of time, the agreed to Cash Value Increases had to be – and were – ***substantial***: 42% of the first ten years of scheduled premium payments at the end of the 20th year (approximately $25,000), and 300% at the end of the 30th (approximately $200,000) and 40th years (approximately $200,000).

11.  The agreed to Cash Value Increases are depicted in the illustration of Policy performance issued to Plaintiff on September 7, 1990, a true and accurate copy of which is attached as **Exhibit B** (the "Issue Illustration"). The Cash Value Increases depicted in the Issue Illustration are expressly incorporated into the column labelled "Ultimate Cash Value," which draws no distinction between "illustrated" or "guaranteed" values.  **Exhibit B**, at 1.

12.  The Cash Value Increases were further confirmed by the following statement in the Issue Illustration:

> CASH VALUE INCREASE: This illustration assumes an increase in Cash Values equal to the following percentages of premiums (excluding unscheduled premiums and recurring unscheduled premiums) paid during the first ten years: end of the 20th year 42%; end of the 30th year 300%; end of the 40th year 300%.

**Exhibit B**, at 2.   Notably, no mention is made in this description of any discretion retained by TLIC to withhold the Cash Value Increases so illustrated.

3

CLASS ACTION COMPLAINT

13. The Issue Illustration further provides: "THIS ISSUE ILLUSTRATION IS ATTACHED AND MADE PART OF THE CERTIFICATE WHICH EVIDENCES INSURANCE UNDER THE GROUP MASTER POLICY AND ITS RIDERS."  **Exhibit B**, at 1.

14. The Cash Value Increases depicted in the Issue Illustration are furthermore expressly incorporated into the Group Insurance Certificate, and thus into the Policy contract.  The Group Insurance Certificate is defined as consisting of "The respective Certificate(s) of insurance, including any Illustrations … issued for each Participant." **Exhibit A**, at 5.

15. The Group Insurance Certificate furthermore expressly states:

- That "[t]he Illustration(s) attached to this Certificate … shows the premiums and assumptions required to provide the benefits and Account Values specified herein;" and

- That under the Policy, the owner is "insured for the benefits described on the FACE PAGE and the Illustration(s), if the required premiums for the described benefits have been paid on time."

**Exhibit A**, at 5 & 6.

16. Plaintiff thus had a contractual right to the Cash Value Increases under the Policy, based on the express terms of the Group Insurance Certificate and the Issue Illustration, so long as he paid his premiums on time.

### B. The *Oakes* Class Settlement

17. In 2000, Plaintiff received notice (the "*Oakes* Class Notice") of a class settlement (the "*Oakes* Settlement") reached in certain litigation in Texas state court, styled *Richard Oakes, et al. v. Bankers United Assurance Company, et al.*, No. 96-06849 (Dallas County, Texas, Dist. Ct., 192nd Judicial District) (the "*Oakes* Action"). A true and accurate copy of the *Oakes* Class Notice is attached as **Exhibit C**.

CLASS ACTION COMPLAINT

18.  A true and accurate copy of the *Oakes* Stipulation of Settlement (the "*Oakes* Settlement Agreement") is attached as **Exhibit D**.

19.  Nowhere in the *Oakes* Class Notice or the *Oakes* Settlement Agreement is there any mention of TLIC's contractual obligation to pay the Cash Value Increases under the Policy, let alone an explanation that Plaintiff was supposedly giving up his rights to the approximately $400,000 in future Cash Value Increases in exchange for an "interest bonus credit" of approximately $400.

20.  To the contrary, in the *Oakes* Settlement Agreement, it expressly provides that "Nothing in this Release shall be deemed to alter a Class Member's rights … to make a claim for benefits that will become payable in the future pursuant to the express written terms of the policy form issued by the Defendants." **Exhibit D**, at 52.

21.  In addition, in the *Oakes* Class Notice's Q&A's describing the *Oakes* Settlement, TLIC ***twice*** assured Plaintiff that the proposed settlement "does not alter your contractual rights under the express terms of your existing Policy," and that "You will still be able to make a claim for any benefits that may become payable in the future under the express terms of your existing Policy." **Exhibit C,** at ECF 20 & 36, FAQ 6.

22.  Furthermore, in the cover letter sent to Plaintiff, a true and accurate copy of which is attached as **Exhibit E**, TLIC explained only that pursuant to the *Oakes* Settlement, Plaintiff would receive a "Contributed Insurance Benefit Certificate" and an "interest bonus credit."  Again, no reference was made to the Cash Value Increases, let alone any suggestion that TLIC had been relieved of any obligation to credit the Cash Value Increases by virtue of the *Oakes* Settlement.

23.  The release language of the "Final Order and Judgment" entered in the *Oakes* Action, a true and accurate copy of which is attached as **Exhibit F** (the "*Oakes* Judgment"), mirrored the terms of the *Oakes* Settlement Agreement,

including specifically the express preservation of all claims to future benefits under the Policy Contract.

### C. TLIC Credits the 20th Anniversary Cash Value Increase Notwithstanding the *Oakes* Settlement

24. In the years following the *Oakes* Settlement Plaintiff continued to perform all of his premium payment obligations under the Policy.

25. Plaintiff's Policy reached its 20th anniversary date on September 7, 2010.

26. Consistent with the terms of the Policy and the Issue Illustration, TLIC credited Plaintiff with the Cash Value Increase of $26,889.07 (42% of the first ten years of scheduled premium payments) on his 20th anniversary date.

27. At the time it credited the 20th anniversary Cash Value Increase, TLIC made no assertion that its obligation to do so had been released by the *Oakes* Settlement. To the contrary, TLIC continued to perform under the Policy in a manner consistent with its contractual obligation to make the Cash Value Increases under the Policy, unaffected by the *Oakes* Settlement.

28. Alternatively, TLIC ratified its obligation to credit the Cash Value Increases on the stated Policy anniversary dates notwithstanding the *Oakes* Settlement. At the time it credited the 20th anniversary Cash Value Increase, therefore, TLIC sent all Policyowners, including Plaintiff, a form letter which in pertinent part stated:

> Please note that future amounts to be so credited will also be based on percentages of the first 10 years of scheduled premium. Any such amounts would be paid at the end of the 30th and 40th years based on a consideration of guaranteed and non-guaranteed portions.

A true and accurate copy of the form letter sent to Plaintiff is attached as **Exhibit G**. That TLIC sent the same form letter to other Policyowners is demonstrated by the attached **Exhibit H**.

29. For the next five years following TLIC's payment of the 20th anniversary Cash Value Increase, Plaintiff continued to perform all his premium payment obligations under the Policy.

**D.    TLIC Anticipatorily Repudiates the Policy Contract**

30. The parties' entire course of performance under the Policy was shattered, however, in Spring 2016.

31. By standardized form letter dated March 25, 2016, a true and accurate copy of which is attached as **Exhibit I** (the "Repudiation Letter"), TLIC announced that "we will not credit any cash value bonuses for [the Policy] for the 30th and 40th anniversary years." TLIC's sole stated justification was its purported belief that doing so was "[c]onsistent with the terms of the [*Oakes*] class action lawsuit in 2001 [sic 2000] that included your policy." TLIC sent the same form Repudiation Letter to other Policyowners, as evidenced by the attached **Exhibit J**.

32. As permitted under California law, rather than file suit immediately, Plaintiff elected to await TLIC's performance when due with respect to the 30th anniversary Cash Value Increase, on September 7, 2020.

**E.    Plaintiff's Contract Claim is Not Barred by the *Oakes* Class Release**

33. The class release set forth under the *Oakes* Settlement Agreement and the *Oakes* Judgment (collectively, the "*Oakes* Class Release") did not, and could not, extinguish Plaintiff's claims to receive the Cash Value Increases as contractual benefits of the Policy, for several alternative and independently dispositive reasons.

34. ***First***, Plaintiff's right to recover all contract benefits under the Policy was expressly reserved in the *Oakes* Class Release. The *Oakes* Class Release expressly states that, subject only to certain enumerated exceptions, "Nothing in

CLASS ACTION COMPLAINT

1  this Release shall be deemed to alter a Class Member's rights … to make a claim
2  for benefits that will become payable in the future pursuant to the express written
3  terms of the policy form issued by [TLIC]." **Exhibit D**, at 52; **Exhibit C**, at 31;
4  **Exhibit F**, at 11. Furthermore, the *Oakes* Class Notice expressly confirmed that
5  "the proposed settlement does not alter your contractual rights under the express
6  terms of your existing Policy."  **Exhibit C**, at ECF 36, FAQ 6.

7        35.  None of the enumerated exceptions to the preservation of claims makes
8  any reference to the Cash Value Increases. Although one of the exceptions makes
9  a passing reference to TLIC's "policies and practices" regarding "persistency, or
10 other policy bonuses," that broad general reference is limited to claims arising out
11 of or relating to "Released Transactions," which is specifically premised on the
12 point of sale inducements relating to "the marketing, solicitation, application,
13 underwriting, issuing, actuarial and/or pricing assumptions, charges, rates,
14 acceptance, sale, purchase, operation, retention, administration, servicing,
15 performance of or replacement … of … the Policies." **Exhibit D,** at 51; *id.* at 49;
16 **Exhibit F,** at 10; *id.* at 8.  *See, e.g., Vakas v. Transamerica Occidental Life Ins.*
17 *Co.*, 242 F.R.D. 589, 596 (D. Kan. 2006) (rejecting argument that earlier class
18 settlement precluded the plaintiff's breach of contract claims against TLIC:
19 "Plaintiffs are claiming a breach by defendant of the express terms of the
20 insurance policy and are in no way making a claim based on the way the policy
21 was sold or marketed to Dr. Vakas.").

22       36.  ***Second***, even ignoring *arguendo* the express reservation of the right to
23 assert contract claims in the *Oakes* Class Release, Plaintiff's breach of contract
24 claim here is premised on actions taken by TLIC ***subsequent*** to the *Oakes*
25 Settlement. There is a sharp and critical distinction between (a) future claims
26 based on past pre-release conduct and (b) future claims based on conduct that
27 occurs ***after*** the class release is approved. *See Varacallo v. Mass. Mut. Life Ins.*

CLASS ACTION COMPLAINT

*Co.*, 226 F.R.D. 207, 244 (D.N.J. 2005) (the court upheld a proposed agreement because it released only "future claims for [past] conduct" and not "[f]uture claims for future conduct."); *Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *6 (N.D. Cal. Feb. 16, 2016); *Green v. Phillips*, No. Civ.A 14436, 2000 WL 33521109, at *1 (Del. Ch. June 28, 2000) (flaw in proposed release was that it was "overbroad insofar as it purported to release claims that could arise in the future"); S*chwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 578 (E.D. Pa. 2001) (finding a release to be "too broad because it bars later claims based on future conduct" and noting that "[a]lthough the law permits a release to bar future claims based on the past conduct of the defendant ... this release would bar later claims based not only on past conduct but also future conduct.") (citation omitted). The *Oakes* Class Notice itself confirmed that the *Oakes* Class Release applied only to "***past actions*** which may have caused, or may cause in the future, increases in the amount of premiums for a Policy or a decrease in a Policy's cash value." **Exhibit C**, at 19 (emphasis added). The *Oakes* Class Release thus cannot and does not extend to claims premised on future conduct. *Feller v. Transamerica Life Ins. Co.*, No. 2:16cv-01378-CAS (AJWx), 2016 WL 6602561, at *5 (C.D. Cal. Nov. 8, 2016) ("If defendant's interpretation of the [purported class release] were correct, it would release claims based on virtually any subsequent actions by defendant so long as those actions could be construed to fall within the [release's] "Released Transactions" definition.").

37.  ***Third***, no matter how broadly stated the language of the *Oakes* Class Release may be, as a matter of due process the scope of that class release excludes Plaintiff's claims on multiple grounds.

38.  A settlement class release is limited to claims premised on the identical factual predicate as the claims alleged in earlier class action. *Hesse v. Sprint Corp.*, 598 F.3d 581, 584 (9th Cir. 2010). The Ninth Circuit has accordingly cautioned

that while a defendant "may have drafted the settlement agreement to include as broad a release as possible, the release would have only been ***enforceable*** as to subsequent 'claims relying upon a legal theory different from that relied upon in the class action complaint, but depending upon the same set of facts.'" *Williams v. Boeing Co.*, 517 F.3d 1120, 1134 (9th Cir. 2008) (emphasis in original) (citation omitted); *see, e.g., McNeary-Calloway v. JPMorgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 949 (N.D. Cal. 2012) (applying *Hesse* and *Williams* to interpret scope of class release under California law); *Perkins*, 2016 WL 613255, at *6 ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (quoting *Hesse*, 598 F.3d at 590) (internal quotation marks omitted).[1]

39.   In addition, due process precludes the extension of a class release to claims not clearly communicated in the class notice. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (holding that, to satisfy due process, notice "must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'") (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)); *Molski v. Gleich*, 318 F.3d 937, 951-52 (9th

---

[1] *See also*, *e.g.*, *Raquedan v. Volume Servs., Inc.*, No. 18-CV-01139-LHK, 2018 WL 3753505, at *6 (N.D. Cal. Aug. 8, 2018) ("Even if the *Thompson* release attempts to reach claims not based on an identical factual predicate, Ninth Circuit law explicitly limits the release to claims based on the identical factual predicate."); *Cancilla v. Ecolab Inc.*, No. C 12-03001 CRB, 2014 WL 2943237, at *7 (N.D. Cal. June 30, 2014) ("Release will depend on whether the present claim is based on the 'identical factual predicate as that underlying the claim' in the previous settled class action.") (citation omitted).

CLASS ACTION COMPLAINT

Cir. 2003) (finding settlement notice inadequate because it failed to clearly describe the released class claims); *Logan v. Hargraves*, No. CV-04-0214-FVS, 2008 WL 11425713, at *2 (E.D. Wash. Sept. 25, 2008) ("[W]here the terms of a settlement involve the release of claims, the settlement notice must clearly identify the claims being released.").

40. Here, Plaintiff's contract claims do not share the "identical factual predicate" as the pleadings in the *Oakes* Action, for at least two reasons. First, claims premised on factual occurrences nearly 20 years ***after*** a class settlement cannot logically share the "identical factual predicate" with the earlier settlement. *Feller*, 2016 WL 6602561, at * 6; *see also*, *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, No. ML 04-1610 AHM (Mex), 2005 WL 5678842, at *7 (C.D. Cal. Apr. 26, 2005) ("Plaintiffs' breach of contract claims here are not based on the identical factual predicate as the [earlier class] claims and involve actions by Defendants that first occurred years after the [earlier class] settlement and that therefore could not have been asserted in the [earlier class] litigation."). As one court succinctly put it: "If the facts have not yet occurred, then they cannot possibly be the basis for the underlying action." *UniSuper Ltd. v. News Corp.*, 898 A.2d 344, 347 (Del. Ch. 2006).

41. Second, the *Oakes* Settlement Agreement described the claims alleged in the operative pleading as follows:

> The Seventh Amended Petition asserts claims relating to Defendants' life insurance marketing, administrative and sales practices and alleges, among other things: *(i)* that Defendants promised that either a single prepayment of premiums, or a limited number of premiums during the years after the purchase of a Policy (as defined below), would suffice to cover all out-of-pocket premiums due on the Policies throughout Plaintiffs' lives, or for a specified period without a reduction in the Policies' originally illustrated death benefits and/or without a reduction in the Policy values or would provide cash values

11

in the future to be available as retirement benefits; *(ii)* that Defendants either knowingly or recklessly misrepresented the reasonableness of (or failed to disclose the potential variability of) interest crediting rates and dividends illustrated to the Plaintiffs; *(iii)* that Defendants misrepresented, in part through the use of misleading illustrations and marketing materials, *(a)* the premium terms, charges, commissions, expenses, annual retirement income, administrative costs, federal income tax consequences and financial performance of their insurance Policies; *(b)* their life insurance Policies as savings, retirement and/or investment plans, without disclosing, or de-emphasizing, that the product sold was in fact life insurance; *(c)* the cash value and/or benefits to be realized or paid based on a fixed number or amount of cash payments; *(d)* the nature, design, actuarial and pricing assumptions, quality, suitability, operation and administration of the products sold; and *(e)* their interest crediting and policy charge practices and procedures; *(iv)* that Defendants misrepresented the financial impact on the policyowner of surrendering, or using loans, partial surrenders or withdrawals of cash values and/or dividends from an existing policy or policies to purchase a new Policy or Policies issued by the Company (as defined below); and *(v)* that Defendants failed to adequately retain, supervise, educate and train their sales representatives.

**Exhibit D**, at 2-3. Conspicuously absent from this description of the claims in *Oakes* at the time of the *Oakes* Settlement is any reference to any contractual obligation to credit the Cash Value Increases, let alone (obviously) to TLIC's repudiation of any obligation to do so some 16 years later.

42. Nor did the operative pleading in the *Oakes* Action – the "Seventh Amended Original Petition and Jury Demand," a copy of which is attached as **Exhibit K** – in fact purport to address TLIC's contractual obligation to credit the Cash Value Increases. All of the allegedly common factual issues supporting certification of the *Oakes* Settlement class pertained to allegations of misrepresentations and fraudulent inducement. **Exhibit K**, at 5-7. More specifically, the *Oakes* plaintiffs alleged:

CLASS ACTION COMPLAINT

Defendants provided standardized, coordinated and uniformly deceptive marketing materials and software to prepare illustrations ***to induce Plaintiffs and Class Members to purchase the product*** by doing one or more of the following:

a.    Failing to describe the hypothetical basis of the interest rate or crediting rate in the illustration.

b.    Using an interest rate, dividend scale, or crediting rate in the illustration that exceeded the company's actual current earnings on the investment segment backing the type of product sold.

c.    Using a fictitious interest rate, dividend scale, or crediting rate in the illustration that exceeded the current crediting rate.

d.    Failing to disclose the great risk that the Plaintiffs and Class Members would not realize promised federal income tax deductions and/or would have additional income subject to federal income tax as a result of payments required under the Direct Recognition Life insurance policy when sold as a "Private Pension Plan."

e.    Failing to disclose the grave federal income tax risk to the Plaintiffs and Class Members that would be entailed by taking "retirement payments" under the Private Pension Plan in the form of insurance policy loans.

f.    Using an expense charge in the crediting rate that did not reflect actual recent company experience.

g.    Using mortality rates lower than the actual recent company experiences.

h.    Assuming unjustified mortality improvements in the future.

i.    Assuming a persistency bonus rate based on erroneous assumptions lacking any reasonable basis in fact.

j.    Using unrealistic, unattainable cash value increase assumptions in the twentieth, thirtieth, and fortieth years.

k.    Training its agents in the use of false and fraudulently stated illustrations and marketing materials when they knew that the marketing materials contained misrepresentations that would be relied upon by the Plaintiffs and Class Members as factual.

**Exhibit K**, at 9-10 (emphasis added); *see also, id.* at 9-11 (alleging fraudulent inducement claims).

CLASS ACTION COMPLAINT

43. Furthermore, the "Seventh Amended Original Petition and Jury Demand" made no reference at all to TLIC's contractual obligation to credit the Cash Value Increases. Indeed, to the extent the *Oakes* plaintiffs alleged any contract claim at all, it was explicitly related to a past breach which, though left unspecified in three conclusory sentences, was alleged to have ***already occurred*** at the time of the *Oakes* Settlement – and therefore premised on conduct by TLIC that could not possibly have involved the same operative facts as Plaintiff's breach of contract claims based on TLIC's repudiation of its obligations to make the 30th and 40th anniversary Cash Value Increases, since not even the 20th anniversary Cash Value Increase had come due as of 2000. **Exhibit K**, at 12; **Exhibit G**.

44. Finally, the description of the settled claims in the *Oakes* Class Notice is even more narrowly focused on alleged misrepresentations at the point of sale than the *Oakes* Settlement Agreement or the *Oakes* pleadings. *See* **Exhibit C**, at 6. This description of the *Oakes* claims carries over to the description of the "Released Transactions" in the *Oakes* Class Release. *Id.* at 29. Nothing in the *Oakes* Class Notice would alert a class member that the right to enforce TLIC's contractual obligation to credit the Cash Value Increases in future decades was being traded away for the comparatively nominal benefits of the *Oakes* Settlement Agreement. Once again, conspicuously absent from the description of the claims in the *Oakes* Class Notice is any reference to any contractual obligation to credit the Cash Value Increases, let alone (obviously) to TLIC's repudiation of any obligation to do so some 16 years later.

45. For each and all the foregoing reasons, this action brought by Plaintiff on behalf of himself and all similarly situated Policyowners to remedy the failure of TLIC to perform its contractual obligation to credit the 30th and 40th anniversary Cash Value Increases is not barred by the *Oakes* Class Release.

CLASS ACTION COMPLAINT

1

**CLASS ALLEGATIONS**

2      46.   Plaintiff brings this action as a class action under Rules 23(a), 23(b)(2),

3   and 23(b)(3), *Federal Rules of Civil Procedure*.

4      47.   Plaintiff asserts his claims for breach of contract on behalf of the

5   following class (the "National Class"):

6
        All persons who, within the Class Period, own or owned an in-force
7       Direct Recognition Life I Policy.

8
9   Plaintiff asserts her remaining claims on behalf of the following subclass (the

10  "California Subclass"):

11      All members of the National Class who reside in California.

12
13  The National Class and the California Subclass are referred to collectively as the

14  "Classes."

15      48.   Excluded from the Classes are TLIC; any affiliate, parent, or

16  subsidiary of TLIC; any entity in which TLIC has a controlling interest; any

17  officer, director, or employee of TLIC; any successor or assign of TLIC; any

18  Judge to whom this case is assigned as well as his or her immediate family and

19  staff; and any member of the putative class with pending individual litigation

20  against TLIC based on an alleged failure to pay the Cash Value Increases.

21      49.   For pleading purposes, the Class Period is defined from the earliest bar

22  date under the applicable statute of limitations through the date final judgment is

23  entered in this action.

24      50.   Plaintiff reserves the right to amend or modify the Class definitions in

25  connection with a motion for class certification or with the result of discovery.

26
27
28
                                    15
                         CLASS ACTION COMPLAINT

### Numerosity

51.  Plaintiff does not know the exact size or identities of the proposed Classes. However, Plaintiff reasonably believes the Classes encompass hundreds of individuals dispersed geographically throughout the United States and California, respectively. Therefore, the proposed Classes are so numerous that joinder of all members is impracticable. Membership in the Classes is ascertainable by virtue of the records of TLIC. Members of the Classes can be notified of the pendency of this action by mail and/or electronic mail, supplemented if deemed necessary or appropriate by the Court by published notice.

### Predominance of Common Issues

52.  There are questions of law and fact that are common to the Classes, which predominate over any questions affecting only individual members of the Classes. The common questions include, but are not limited to, the following:

a.  whether TLIC has a contractual obligation to pay the 30th and 40th anniversary Cash Value Increases as scheduled;
b.  whether TLIC has repudiated and/or anticipatorily repudiated that obligation;
c.  whether TLIC's conduct constitutes a breach of its express obligations under the Policy;
d.  whether TLIC's conduct constitutes a breach of its implied obligations under the Policy; and
e.  the nature and scope of the remedy available to Plaintiff and other similarly situated Policyowners, including but not limited to damages or equitable relief.

### Typicality

53.  Plaintiff's claims are typical of the claims of the Classes and do not conflict with the interests of any other members of the Classes. Plaintiff and the Classes members were subjected to the same challenged course of conduct and suffered the same economic harm resulting from the actions taken by TLIC.

CLASS ACTION COMPLAINT

### Adequate Representation

54. Plaintiff will fairly and adequately represent the interests of the Classes. Plaintiff is committed to the vigorous prosecution of the Classes' claims and has retained attorneys who are qualified to pursue this litigation and are experienced in class action litigation. Neither Plaintiff nor his counsel have interests conflicting with those of the other Classes members.

### Superiority

55. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages suffered by each individual Classes member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by TLIC's conduct. Further, it would be virtually impossible for the Classes members to individually and effectively redress the wrongs done to them. Use of the class action device in this instance presents far fewer management difficulties than alternative methods of adjudication, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

• **Rule 23(b)(2):**

56. Class certification is also warranted under Rule 23(b)(2). A class may be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (the requirements of Rule 23(b)(2) "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole").

57. Certification under Rule 23(b)(2) is appropriate here because all of the members of the Classes have by definition been exposed to TLIC's challenged

CLASS ACTION COMPLAINT

conduct. Moreover, the declaratory and injunctive relief sought by Plaintiff are by definition generally applicable across the Classes as a whole.

- **Rule 23(b)(3):**

58. This action is appropriate as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3).

59. The common questions of law and fact listed above predominate over any individualized questions.

60. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, for the following reasons:

a. Few, if any, Classes members could afford cost-effective legal redress on an individual basis for the wrongs that TLIC has committed against them, and absent members of the Classes have no substantial interest in individually controlling the prosecution of individual actions;

b. Once TLIC's liability has been adjudicated with respect to its obligations under the Policy, claims of all members of the Classes can be determined by the Court;

c. This action will ensure an orderly and expeditious administration of the Class's claims and foster economies of time, effort, and expense, and ensure uniformity of decisions and compliance by TLIC with the Policy;

d. Without a class action, many members of the Classes would continue to suffer injury, and TLIC's actions will continue without redress while it continues to reap and retain the substantial proceeds and reductions in its future liabilities derived from its wrongful conduct; and

e. This action does not present any undue difficulties that would impede its management by the Court as a class action.

61. A class action is superior to other available means for the fair and efficient adjudication of this controversy. The injuries suffered by individual

CLASS ACTION COMPLAINT

members of the Classes are, though important to them, relatively small compared to the burden and expense of individual prosecution needed to address TLIC's conduct. Also, individualized litigation presents a potential for inconsistent or contradictory judgments. In contrast, a class action presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

62. ***Nature of Notice to the Proposed Class.*** The names and addresses of all members of the Classes are contained in the business records maintained by TLIC and are readily available to TLIC. Membership in the Classes is thus readily and objectively identifiable. Plaintiff contemplates that notice will be provided to Class members by direct mail.

## **FIRST CAUSE OF ACTION**

### *(Declaratory Relief – All Classes)*

63. Plaintiff refers to the prior paragraphs of this Complaint and incorporates those paragraphs as though set forth in full in this cause of action.

64. An actual controversy has arisen and now exists between TLIC, on the one hand, and Plaintiff, on the other hand, concerning the respective rights and duties of the parties under the Policy with respect to the Cash Value Increases.

65. TLIC contends the *Oakes* Settlement authorizes it to evade its obligation under the Policy to credit the 30th and 40th anniversary Cash Value Increases. On the other hand, Plaintiff maintains that TLIC is precluded from doing so by the express and implied terms of the Policy, by the limited scope of the *Oakes* Settlement (especially as communicated to Plaintiff), by TLIC's ratification of its contractual obligations following the *Oakes* Settlement in paying the 20th anniversary Cash Value Increase, by the Parties' course of performance since the *Oakes* Settlement, and by the Due Process clause of the United States

CLASS ACTION COMPLAINT

Constitution (which limits the scope of a class settlement release to claims premised on the same factual predicate as the claims alleged in the settled action).

66.    Plaintiff, on behalf of himself and the Classes, accordingly seeks a declaration as to the parties' respective rights under the Policy with respect to TLIC's obligation to honor the 30th and 40th anniversary Cash Value Increases promised under the Policy.

## SECOND CAUSE OF ACTION

### *(Breach of Contract – All Classes)*

67.  Plaintiff refers to the prior paragraphs of this Complaint and incorporates those paragraphs as though set forth in full in this cause of action.

68.  The Policy is an enforceable contract between TLIC and Plaintiff, including the Group Insurance Certificate and the Issue Illustration incorporated therein by reference.

69.  At all relevant times, Plaintiff performed all his obligations under the Policy.

70.  As alleged above, TLIC is obligated under the Policy contract to credit the Cash Value Increases on the 30th and 40th anniversary dates.

71.  Through its failure to pay or credit the 30th anniversary Cash Value Increase, TLIC has breached the Policy.

72.  Through its repudiation in the Repudiation Letter of any obligation to pay the 40th anniversary Cash Value Increase, TLIC has materially anticipatorily breached the terms and provisions of the Policy.

73.  TLIC's conduct and material breaches of the Policy have caused or will cause damage to Plaintiff and the other members of the Classes in an amount to be determined at trial.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THIRD CAUSE OF ACTION

*(Contract Breach of the Implied Covenant of Good Faith and Fair Dealing
– California Subclasses)*

74.   Plaintiff refers to the prior paragraphs of this Complaint and incorporates those paragraphs as though set forth in full in this cause of action.

75.   The Policy is a valid, enforceable contract between Plaintiff and TLIC.

76.   Implied in each Policy is a contractual covenant of good faith and fair dealing through which TLIC owed Plaintiff and the other members of the California Subclass a duty to act in good faith and deal fairly, and in a manner that did not frustrate their reasonable expectations under the Policy.

77.   TLIC contractually breached the implied covenant of good faith and fair dealing because, to the extent TLIC had the discretion to fail or refuse to credit the 30th and 40th anniversary Cash Value Increases, that discretion was sufficiently constrained under the terms of Policy to support an implied obligation of good faith and fair dealing with respect to the 30th and 40th anniversary Cash Value Increases.

78.   TLIC exercised such discretion under the Policy in bad faith and breached the implied covenant of good faith and fair dealing by declining to honor the Cash Value Increases based on the *Oakes* Settlement, even though it knew that the *Oakes* Settlement preserved the right of Plaintiff and the other members of the California Subclass all such contractual benefits of the Policy.

79.   TLIC's contractual breach of the implied covenant of good faith and fair dealing has proximately caused damage to Plaintiff and the California Subclass Members in an amount to be determined at the time of trial.

80.   In addition, unless TLIC is preliminarily and permanently enjoined from failing or refusing to credit the 30th and 40th anniversary Cash Value Increases, Plaintiffs and the California Subclass Members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

21
CLASS ACTION COMPLAINT

# FOURTH CAUSE OF ACTION

*(Tortious Breach of the Duty of Good Faith and Fair Dealing – California Subclasses)*

81.    Plaintiff refers to the prior paragraphs of this Complaint and incorporates those paragraphs as though set forth in full in this cause of action.

82.    The Policy is a valid, enforceable contract between TLIC and Plaintiff and the other members of the California Subclass.

83.    Life insurance policies, like those owned by Plaintiff and the Subclass Members, protect them from the economic harm and risk presented by death.  As is the case with most insurance contracts, TLIC and the Policyowners' financial interests are directly at odds: TLIC benefits from repudiating the 30th and 40th anniversary Cash Value Increases to Policyowners and the Policyowners are harmed by such conduct. As explained above, TLIC benefits if Plaintiff and the Subclass Members forfeit their policies because it will have obtained premium payments without having to pay death benefits, promised credited interest rates, and the promised Cash Value Increases.

84.    For these reasons, TLIC owes Plaintiff and Subclass Members a heightened duty of good faith and fair dealing. Among other things, TLIC must refrain from doing anything to injure the Policyowners' right to receive the benefits of the Policy.  TLIC is required to give at least as much consideration to the welfare of the Policyowners as it gives to its own interests. Furthermore, TLIC has a duty to reasonably inform Plaintiff and the Subclass Members of their rights and obligations under the Policy.

85.    As alleged above, TLIC has breached these duties in connection with the 30th and 40th anniversary Cash Value Increases, thereby frustrating the reasonable expectations of Plaintiff and the Subclass Members and tortiously depriving them of benefits under the Policy. In failing to credit the 30th anniversary

CLASS ACTION COMPLAINT

Cash Value Increase, TLIC did not give proper consideration to the welfare of Plaintiff and the other members of the Subclass and served solely its own interests at their expense. In addition, TLIC has failed to truthfully, let alone reasonably, disclose or describe its course of conduct, or the basis and reasons for its course of conduct.

86.    TLIC's alleged acts and omissions were and are unreasonable and without proper cause. If left unabated, TLIC's conduct will frustrate and deprive Plaintiff and the Subclass Members of the reasonably expected benefits of their Policy.

87.    TLIC is, in particular, improperly withholding benefits due Plaintiff and the Subclass Members under the Policy.

88.    TLIC's tortious breach of the covenant of good faith and fair dealing has proximately caused damages to Plaintiff and the Subclass Members in an amount to be determined at the time of trial.

89.    TLIC's conduct was intentional, deliberate, and constitutes oppression, fraud, or malice.  Plaintiff and the Subclass Members are entitled to recover punitive and exemplary damages in an amount to be determined by the trier of fact.  Plaintiff also seeks an order requiring TLIC to disgorge all profits that it received in connection with the above-referenced wrongful acts and omissions.

90.    In addition, unless TLIC is preliminarily and permanently enjoined from failing or refusing to credit the Cash Value Increases on the 30th and 40th anniversary dates, Plaintiff and Subclass Members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for relief as follows:

CLASS ACTION COMPLAINT

A.      An Order certifying this action to proceed as a class action on behalf of the Classes, and appointing Plaintiff and the counsel listed below to represent the Classes;

B.      An Order determining and declaring TLIC's obligation to pay the 30th and 40th anniversary Cash Value Increases;

C.      An Order awarding compensatory damages or restitution to Plaintiff and the other beneficiary members of the Classes, plus prejudgment and post-judgment interest;

D.      An Order awarding Plaintiff and all members of the Classes such other equitable relief as the Court deems proper;

E.      An Order awarding attorneys' fees, expert witness fees and other costs pursuant applicable common fund jurisprudence; and

F.      An Order awarding such other and further relief as may be just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial of all issues triable by jury.

Dated: February 1, 2021.

**BONNETT FAIRBOURN FRIEDMAN**
 **& BALINT, PC**

*/s/ Patricia N. Syverson*
Patricia N. Syverson (SBN: 203111)
psyverson@bffb.com
600 West Broadway, #900
San Diego, CA 92101
Telephone: (619) 798-4292
Fax: (602) 274-1199

CLASS ACTION COMPLAINT

1   Andrew S. Friedman (pending *Pro Hac Vice*)
    afriedman@bffb.com
2   Francis J. Balint, Jr. (pending *Pro Hac Vice*)
    fbalint@bffb.com
3   2325 East Camelback Road, Suite 300
4   Phoenix, AZ 85016
    Telephone: (602) 274-1100
5   Fax: (602) 274-1199

6

7   Randy D. Curry (SBN: 119636)
    randydcurrylaw@gmail.com
8   LAW OFFICES OF RANDY D. CURRY
9   2901 W. Coast Highway, Suite 200
    Newport Beach, CA 92663
10  Telephone: (949) 258-4381
    Fax: (949) 258-4382
11

12  *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT